IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

**AARON DEWAYNE HUDGINS,**

    **Plaintiff,**

**v.**                                                      **Case No. 3:16-cv-03218**

**PRIMECARE MEDICAL,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Robert C. Chambers, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the defendant's Motion to Dismiss the Complaint and Alternative Motion for Summary Judgment (ECF No. 10), which is unopposed.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff's Complaint alleges that, while he was incarcerated at the Western Regional Jail on January 15, 2016, his blood pressure and psychiatric medications were improperly administered by PrimeCare Medical, Inc.'s (hereinafter "PrimeCare") personnel, causing his blood pressure to "bottom out" and, subsequently, three inmates took advantage of him and assaulted him. (ECF No. 2 at 7). Specifically, the plaintiff alleges that the crushing of his medications by PrimeCare personnel was negligent, unsupervised and untrained, and almost resulted in his death. The Complaint further states:

> These medications are plainly marked "Do Not Crush." It's a necessity for the medication to break down in a timely manner from a whole pill form. Crushing these medications had severe adverse side effects.

(ECF No. 2 at 4-5).

On May 13, 2016, PrimeCare, by counsel, filed the instant Motion to Dismiss the Complaint and Alternative Motion for Summary Judgment, with exhibits (ECF No. 10), and a Memorandum of Law in support thereof (ECF No. 11). PrimeCare's motion first asserts that this federal court lacks subject matter jurisdiction over this matter because the plaintiff has not asserted a federal claim that would grant this court jurisdiction under 28 U.S.C. § 1331. (ECF No. 11 at 2-3). PrimeCare further asserts that the Complaint must be dismissed because the plaintiff failed to exhaust his administrative remedies. (*Id.* at 3-5). Finally, PrimeCare contends that, to the extent that the plaintiff is alleging a claim of medical negligence, he has failed to comply with the pre-filing requirements of the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.* (*Id.* at 6-8).[1] The undersigned will address each of these arguments *infra*.

The plaintiff had not responded to PrimeCare's motion and has not engaged in this civil action in any way since the filing of the Complaint. Thus, on February 3, 2017, the undersigned entered an Order directing the plaintiff to respond to PrimeCare's motion by February 17, 2017. (ECF No. 21). Because the court may treat PrimeCare's motion as one for summary judgment, the undersigned's Order included language, pursuant to the

---

[1] Beyond an assertion in the "Statement of Facts" section of PrimeCare's Memorandum of Law stating that the plaintiff's medical records [which are attached to the Motion] demonstrate that his blood pressure did not "bottom out," (ECF No. 11 at 1-2) and an assertion that the plaintiff's medications were not crushed contained in the Affidavit of Berea Porter (ECF No. 10, Attach. 3, Ex. C at 2), PrimeCare fails to make any specific argument that the plaintiff's Complaint fails to state a proper claim of medical negligence. Because there are other bases for the dismissal of the Complaint, the undersigned declines to address the merits of the plaintiff's negligence claim.

holding of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising the plaintiff of his right and obligation to respond to the motion, including details about the type of evidence he may present to oppose the motion, and warning him that the failure to respond may result in entry of summary judgment denying the relief sought in the Complaint and dismissing the suit. (*Id.*)

However, the plaintiff had not advised the Clerk of Court of his transfer from the South Central Regional Jail ("SCRJ") to the Huttonsville Correctional Center ("HCC"). Thus, the undersigned's February 3, 2017 Order, which was initially mailed to the SCRJ, was returned to the Clerk and it was re-mailed to the plaintiff at HCC on February 13, 2017. (ECF No. 22). As of today's date, the plaintiff has not filed any response to PrimeCare's motion or requested any extension of time to do so. Therefore, the District Court may treat PrimeCare's motion as being unopposed.

## **STANDARD OF REVIEW**

### *Dismissal for failure to state a claim upon which relief can be granted*

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

PrimeCare's motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard. To the extent that PrimeCare asserts that the court lacks subject matter jurisdiction to hear the plaintiff's claim against it, the motion will also be addressed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### Summary Judgment

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).  Material facts are those necessary to establish the elements of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  *Id.*  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

> Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:
>
> A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may:  (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

If a party's motion relies upon materials outside of the four corners of the Complaint to support its claim or defenses, as does PrimeCare 's motion, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56. *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

## ANALYSIS

### A. Subject matter jurisdiction.

PrimeCare first contends that this federal court lacks subject matter jurisdiction to consider the plaintiff's Complaint because the plaintiff has not asserted any constitutional or other federal claim that would confer jurisdiction on the court under 28 U.S.C. § 1331. PrimeCare's Memorandum of Law states:

> In this case, the plaintiff's Complaint alleges no violation of the United States constitution or federal law. His allegations are solely premised on medical negligence or malpractice and, at most, constitute a state tort claim.

6

>Therefore this Court has no subject matter jurisdiction and the Plaintiff's Complaint against PrimeCare of West Virginia, Inc. should be dismissed.

(ECF No. 11 at 3).

While the plaintiff has not opposed this argument, the undersigned notes that PrimeCare (which the defendant's Memorandum of Law further identifies as "PrimeCare of West Virginia, Inc.") is a corporation that operates in West Virginia, but has its principal office in Harrisburg, Pennsylvania.[2] Given this fact and the fact that the plaintiff seeks more than $2.5 million in damages, the undersigned believes that there may be a basis for this court's subject matter jurisdiction under 28 U.S.C. § 1332 based upon diversity of citizenship. Nevertheless, it is not this court's role to advocate for the plaintiff. Thus, the undersigned simply proposes that the presiding District Judge decline to dismiss this matter solely on the basis of lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure, without receiving further information from PrimeCare concerning its position on whether diversity of citizenship jurisdiction exists herein.

### B. The plaintiff failed to exhaust his administrative remedies prior to filing his Complaint.

PrimeCare further asserts that the Complaint must be dismissed because the plaintiff failed to exhaust the available administrative remedies prior to filing this suit. PrimeCare's Memorandum of Law addresses the requirements of the West Virginia Prison Litigation Reform Act ("WVPLRA"), contained in West Virginia Code § 25-1A-2, mandating that an inmate "may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been

---

[2] According to the West Virginia Secretary of State's business organization database, both PrimeCare Medical, Inc. and PrimeCare Medical of West Virginia, Inc. list Harrisburg, Pennsylvania as the location of their principal office.

exhausted. W. Va. Code § 25-1A2(c). (ECF No. 11 at 3). The Memorandum of Law further asserts that "an ordinary administrative remedy" includes complaints concerning health care. (*Id.*) (citing W. Va. Code § 25-1A-2(a)).[3]

PrimeCare's Memorandum of Law further asserts:

> In this case, the plaintiff was expected to file a grievance according to the procedure outlined by the West Virginia Regional Jail and Correctional Facility Authority in the handbook of Inmate Rules and Procedures, a copy of which is given to each inmate upon his incarceration. A copy of the handbook is attached in pertinent part, as **Exhibit B**.

(ECF No. 11 at 3). As aptly summarized by our sister court:

> Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the

---

[3] Section 1997e(a) of the federal Prison Litigation Reform Act ("PLRA"), which requires exhaustion of available administrative remedies before an action may be filed under 42 U.S.C. § 1983 or any other federal law, appears to be inapplicable herein, as no such federal claim is alleged in the plaintiff's Complaint.

> next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

*Chase v. Trent*, No. 1:11CV108, 2012 WL 5845361, at *4 (N.D.W. Va. Oct. 16, 2012) (Kaull, M.J.), *report and recommendation adopted*, No. 1:11CV108, 2012 WL 5845219 (N.D.W. Va. Nov. 19, 2012) (Keeley, J). PrimeCare emphasizes that "administrative remedies are not exhausted until all three steps of the grievance process have been completed." (*Id.* at 4-5).

The plaintiff's Complaint contends that he exhausted the grievance process because he "talked to nursing staff and shift supervisor, and Lt. Morrison" about "my psych meds and blood pressure medicines weren't to be crushed." (ECF No. 2 at 3). However, PrimeCare's Memorandum of Law contend that he filed no actual grievances related to his complaint of improper medicine administration. In support of this contention, PrimeCare offers a May 13, 2016 Affidavit executed by Berea Porter, PrimeCare's Health Services Administrator, which states in pertinent part:

> After thorough review, I have determined that Mr. Hudgins filed two (2) grievances related to healthcare during his most recent incarceration at the Western Regional Jail from May 20, 2015 to the present. None of these grievances were in any way related to the improper crushing of his medication, which is the subject of his Complaint. Electronic copies of these grievances are attached to my Affidavit as **Attachments 1 and 2**.

("Porter Affidavit," ECF No. 10, Attach, 3, Ex. C at 1, ¶ 5). The Porter Affidavit further notes that, of the grievances filed by the plaintiff, none of the responses was appealed. (*Id.*, ¶ 6). The plaintiff has not disputed these facts.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff failed to exhaust his administrative remedies before filing his Complaint and, therefore, dismissal of the Complaint, without prejudice, is warranted.

9

### C. The plaintiff failed to comply with the requirements of the MPLA.

PrimeCare further asserts that, to the extent that the plaintiff is claiming medical negligence in the care rendered to him by PrimeCare personnel, his cause of action is governed by the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.*, specifically, W. Va. Code § 55-7B-6(b), requiring pre-suit notification and a screening certificate of merit. *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006). (ECF No. 11 at 6). As further noted by PrimeCare, the Supreme Court of Appeals of West Virginia recently held that the MPLA requirements were mandatory for an inmate incarcerated at the Mount Olive Correctional Complex who brought a medical negligence claim. *See Pendleton v. Wexford Health Sources, Inc.*, No. 15-0014, 2015 WL 8232155 (Sup. Ct. W. Va., Dec. 7, 2015) (unpublished). (ECF No. 11 at 8).

As noted in PrimeCare's Memorandum of Law, West Virginia Code § 55-7B-6 provides, in pertinent part, as follows:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) *At least thirty days prior to the filing of a medical professional liability action against a health care provider*, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and *shall* state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A *separate screening certificate of merit must be provided* for each health care provider against

10

> whom a claim is asserted.  The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. . . .

W. Va. Code § 55-7B-6 (emphasis added in PrimeCare's brief).  (ECF No. 11 at 6).  The MPLA defines "medical professional liability" as "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient."  W. Va. Code § 55-7B-2(i).

PrimeCare further asserts, "[n]owhere in his Complaint does the plaintiff allege compliance with the mandatory notice and screening certificate of merit requirements of the MPLA."  (ECF No. 11 at 7).  PrimeCare further asserts that these requirements have been determined to be mandatory for medical malpractice or negligence claims filed in federal courts.  *See Stanley v. United States*, 321 F. Supp.2d 805, 807 (N.D. W. Va. 2004); *see also Gaylor v. Dagher*, Case No. 2:10-cv-00258, 2011 WL 482834, 2011 U.S. Dist. LEXIS 12400 (S.D. W. Va., Jan. 14, 2011) (unpublished); *Motto v. Correctional Medical Services,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. LEXIS 72436 (S.D. W. Va. Sept. 27, 2007) (unpublished decision).  (*Id.* at 7-8).

The plaintiff has not disputed either the applicability of the MPLA to his case or his failure to comply with the MPLA requirements.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that dismissal of the Complaint is required because the plaintiff failed to meet the requirements of the MPLA.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** PrimeCare's Motion to Dismiss and Alternative Motion for Summary Judgment (ECF No. 10) and dismiss this civil action, without prejudice.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Chief Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff at the Huttonsville Correctional Center.

February 28, 2017

Dwane L. Tinsley
United States Magistrate Judge